UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
GARY LA BARBERA, et al.,                               **REPORT AND**
                                                       **RECOMMENDATION**
                        Plaintiffs,
                                                       08 CV 2573 (SJ)
        - against -

UNITED ORNAMENTALS INC.,

                        Defendant.
-------------------------------------------------------X

On June 27, 2008, plaintiffs, Trustees of Local 282 of the International Brotherhood of Teamsters Welfare, Pension, Annuity, Job Training and Vacation/Sick Leave Trust Funds (the "Funds"), filed this action against defendant United Ornamentals Inc. ("United"), pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. ("ERISA"), and the Labor Management Relations Act of 1947, 29 U.S.C. § 185 ("LMRA"), seeking to recover delinquent contributions owed to the Funds. Plaintiffs also seek a permanent injunction requiring defendant to submit the required contribution reports and payments in accordance with the rules of the Funds, for so long as defendant remains obligated.

Despite proper service of the Summons and Complaint, defendant failed to appear in the action and on July 30, 2008, plaintiffs moved for default, which was entered by the Clerk of Court on August 6, 2008.

By Order dated August 14, 2008, the Honorable Sterling Johnson, United States District Judge, referred the matter to the undersigned to determine whether entry of judgment is appropriate, and to conduct an inquest on damages.

FACTUAL BACKGROUND

According to the Complaint, plaintiffs are trustees of multi-employer benefit trusts that provide fringe benefits to employees performing services within the jurisdiction of Local 282 of the International Brotherhood of Teamsters (the "Union"). (Compl.[1] ¶¶ 2-4; Schreiber Aff.[2] ¶¶ 6-8). Defendant is a corporation located in Holtsville, New York and a signatory to a collective bargaining agreement with the Union (the "CBA"). (Compl. ¶¶ 6, 8; Schreiber Aff. ¶ 9). Pursuant to the CBA and Declaration of Trust, as amended, defendant is required to pay fringe benefit contributions to the Funds for work performed by the individual employees of defendant based on rate schedules set forth in the CBA. (Compl. ¶ 8; Schreiber Aff. ¶ 11). Contributions are due forty-five (45) days following the end of the reporting period. (Schreiber Aff. ¶ 11). Plaintiffs determined that defendant owed the Funds $29,352.11 in unpaid fringe benefit contributions and delinquency charges for the periods from February 2007 through August 2007 and November 2007 through March 2008. (Compl. ¶ 9).

On June 27, 2008, plaintiffs filed this action seeking an award of the delinquent contributions, plus interest, liquidated damages, and attorneys' fees, as authorized by 29 U.S.C. § 1132. The Summons and Complaint were served on defendant through service upon the New York Secretary of State on June 30, 2008. (Schreiber Aff. ¶ 3; Ex. A).

Following service, defendant failed to answer or otherwise respond to the Complaint and a default was entered on August 6, 2008. On August 14, 2008, plaintiffs' motion for default

---

[1]Citations to "Compl." refer to the Complaint filed on June 27, 2008.

[2]Citations to "Schreiber Aff." refer to the Affirmation of Avram H. Schreiber, Esq., submitted in support of default judgment and permanent injunction, dated July 30, 2008.

2

judgment and permanent injunction, was referred to the undersigned to prepare a Report and Recommendation on the issue of damages.

This Court issued an Order, dated August 15, 2008, directing the parties to submit papers in support of their damages calculations by September 15, 2008. Although the Court has received no submissions from defendant, nor has defendant contacted the Court to request additional time, the plaintiffs submitted a Supplemental Affirmation in Support of Plaintiffs' Claim for Damages, dated September 15, 2008 ("Schreiber Supp. Aff."). In that Supplemental Affirmation, counsel for the Funds represents that since the time the Complaint was filed, defendant has failed to submit remittance reports and contribution payments for the periods of April, May, and June 2008. In addition, plaintiffs added a request for unpaid contributions for January 2007. Thus, plaintiffs now demand a total of $47,018.04 in delinquent contributions, interest, liquidated damages, and attorneys' fees. (Schreiber Supp. Aff. ¶¶ 2, 4-5).

## DISCUSSION

Having reviewed the prior proceedings in this case, the Court respectfully recommends that judgment be entered in favor of plaintiffs. Plaintiffs have submitted copies of the relevant portions of the CBA and the Trust Agreement in effect during this period that by their terms required defendant to make certain payments on a monthly basis. (Schreiber Aff. ¶¶ 10, 12, 13; Exs. B, C). The Trust Agreement specifically provides that if the defendant fails to make the payments of contributions as required, defendant would be obligated to pay interest, attorney's fees, auditor's fees and liquidated damages in addition to the amount owed in contributions. (Id. ¶ 13).

3

Defendant has not responded to plaintiffs' motion for entry of judgment or to this Court's Order requiring the submission of papers in connection with the damages request. Thus, there is nothing before this Court that disputes the veracity of plaintiffs' claim that defendant has failed to comply with the terms of the CBA and Trust Agreement.

Moreover, it is beyond dispute that defendant is in default. Not only has the defendant not responded to the motion for judgment and a permanent injunction, see Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992) (holding that "[the defendant's] default is crystal clear - - it does not even oppose this motion"), but the company has not obtained counsel. Such a failure to obtain counsel constitutes a failure to defend because corporations cannot proceed in federal court pro se. See Shapiro, Bernstein & Co. v. Cont'l Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (noting the well settled law that a corporation cannot appear without an attorney); see also Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear through counsel only). Further, the amount of money involved in this case is not great, unlike a case in which there are potentially millions of dollars involved. See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143 at *2 (deciding that default judgment would not enter because plaintiff's damages request ran well into the millions of dollars, and giving defendant an opportunity to contest the default judgment).

Here, defendant has failed to respond to plaintiffs' motion for entry of judgment and a permanent injunction, as well as to the Order from this Court relating to the calculation of damages. Given the numerous opportunities afforded defendant and its apparent lack of interest in participating in these proceedings, there seems to be no compelling reason to delay further.

4

Accordingly, it is respectfully recommended that judgment in the amount of $47,583.90 be entered in favor of plaintiffs. It is further recommended for the reasons stated, infra at 18-20, that the plaintiffs' request for a permanent injunction be denied without prejudice at this time.

A. Default Judgment Damages

It is well-settled that the burden is on the plaintiff to establish its entitlement to recovery. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993); Clague v. Bednarski, 105 F.R.D. 552 (E.D.N.Y. 1985). When a default judgment is entered, the defendant is deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158; Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992); Deshmukh v. Cook, 630 F. Supp. 956, 959 (S.D.N.Y. 1986). However, the plaintiff must still prove damages in an evidentiary proceeding at which the defendant has the opportunity to contest the claimed damages. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158. "'While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.'" Levesque v. Kelly Communications, Inc., No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993) (quoting Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)).

While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988), aff'd, 873 F.2d 38 (2d Cir.

1989). Here, where the plaintiffs have filed reasonably detailed affidavits, declarations and exhibits pertaining to the damages incurred, and where the defendant has failed to respond to either the Order of the Court or plaintiffs' Motion, the Court can make an informed recommendation regarding damages without an evidentiary hearing.

B. <u>Delinquent Contributions</u>

The CBA requires defendants to submit monthly reports and remit all contributions within 45 days of the end of the reporting period; the Trust Agreement provides that if defendant is in default for five working days, defendant shall pay all outstanding contributions plus interest, fees and liquidated damages. (Schreiber Aff. ¶¶ 11, 13; Exs. B, C).

Section 1145 of ERISA provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Here, plaintiffs have alleged that United, as an employer, was obligated under the CBA with the Union to make contributions to the Funds, and that defendant has failed to comply with its contractual obligations, by failing to make payments owed for the periods of February 2007 through August 2007, January 2007, and November 2007 through June 2008. (Schreiber Supp. Aff. ¶¶ 2, 4).

Plaintiffs have provided the Court with a copy of the CBA to which defendant was a

signatory. (Schreiber Aff. Ex. B). Having reviewed the CBA, the Trust Agreement, and the other papers submitted in support of plaintiffs' request, the Court finds that the following amounts are owed by defendant in accordance with the CBA and ERISA:

1) <u>February 2007</u>

According to plaintiffs' records, the remittance report and payment due for the period February 2007 was not submitted until June 27, 2007.[3] (Schreiber Aff. ¶ 17). The report reflected an amount owed of $588.24 in principal contributions; however, the amount paid to plaintiff on June 27, 2007 was only $373.44. (<u>Id.</u>) Thus, plaintiff seeks payment of the unpaid principal amount of $214.80 for February 2007. (<u>Id.</u>)

2) <u>March 2007</u>

The report and payment of contributions for the period of March 2007 was also submitted late on June 27, 2007, and like the month of February, there was an underpayment of $214.80, representing the difference between the $588.24 that was reported owing and the $373.44 that was actually paid. (<u>Id.</u> ¶ 18).

3) <u>April 2007</u>

The remittance report and payments for the period April 2007 were due on or before June

---

[3] Under the CBA's 45-day requirement, the report for February was due in plaintiff's office on April 15, 2007. (Schreiber Aff. ¶ 17). Thus, not only was the payment submitted over two months late, entitling plaintiffs to recover interest and liquidated damages, <u>see</u> discussion <u>infra</u> at 11-16, but the full amount owed in contributions was not paid by defendant. (<u>Id.</u>)

15, 2007 but were also not submitted until June 27, 2007. (Id. ¶ 19). For the month of April, the report reflects contributions owed of $1,715.70, of which only $1,089.20 was paid, resulting in an underpayment for that month of $626.50. (Id.)

4) May 2007

The remittance report and contributions for the period May 2007 were timely submitted, but again, a comparison of the reported amount of $2,818.65 with the amount paid, $1,789.40, demonstrates an underpayment of $1,029.25 for May 2007. (Id. ¶ 20).

5) June 2007

The remittance reports for the period June 2007, which were due August 15, 2007, were submitted in part on June 27, 2007 and then on November 14, 2007. (Id. ¶ 21). They reflect a sum of $2,975.20 in contributions owed for which payment of $2,259.20 was remitted, leaving $716.00 owed. (Id.)[4]

6) November 2007 - March 2008

Defendant failed to submit remittance reports and payments for the period November 2007 through March 2008. (Schreiber Aff. ¶ 25). Under the Trust Agreement, where an

---

[4]The reports for July 2007 and August 2007 were submitted late on November 14, 2007. (Id. ¶¶ 22, 23). However, since the proper amounts appear to have been paid, plaintiffs are only seeking interest and liquidated damages for defendant's untimely submission. (Id.; see discussion infra at 11-16). Similarly, it appears that the remittance reports for the periods September and October 2007 were timely submitted and thus plaintiffs are not seeking damages for either period. (Schreiber Aff. ¶ 24).

employer fails to file a report, contributions may be computed by adding 10% to the number of hours worked for the month in which the largest number of hours were reported in the prior twelve reports submitted by the employer. (Id. ¶ 26; Ex. C, Art. IX, § 1(e)). Although defendant submitted a partial report for the period November 2007, the report is deemed to be incomplete and the Trustees may resort to the formula set forth in the Trust Agreement to compute the amount of contributions owed. (Id. ¶ 27).

In this case, the hours reported for the month of October 2007 represent the largest number of hours reported by the employer for the prior 12 periods. (Id.) The total reported hours for October is 120 hours. (Id. ¶ 28). Since the November 2007 remittance report reflects 40 hours worked through November 12, 2007, the remaining balance of 80 hours, when increased by 10%, as set forth in the Trust Agreement, results in a total of 88 hours owed to each of the Welfare, Pension, Annuity, Job Training and Vacation and Sick Leave Funds. (Id.) When multiplied by the applicable contribution rate in effect for each fund, the principal amounts of contributions owed for the period November 2007 equals $2,231.68 calculated as follows:

| FUND | HOURS | RATE | TOTAL |
|---|---|---|---|
| Welfare | 88 | 9.20 | $809.60 |
| Pension | 88 | 6.15 | $541.20 |
| Annuity | 88 | 7.11 | $625.68 |
| Job Training | 88 | .10 | $8.80 |
| Vacation/Sick Leave | 88 | 2.80 | $246.40 |
| TOTAL | | | $2,231.68 |

(Id. ¶¶ 29, 30; Ex. G).

For the remaining months of December 2007, January 2008, February 2008, and March

2008, plaintiffs seek contributions for each month in the total amount of $3,447.52. (Id. ¶¶ 32-39). Since no reports were submitted for any of these months, plaintiffs calculated the principal contributions owed using the period of October 2007 as the largest reported number of hours (120) increased by 10% for a total of 132, and then multiplied by the rate applicable to each individual fund. These formula hours and contributions are set forth below:

| FUND | HOURS | RATE | TOTAL |
|---|---|---|---|
| Welfare | 132 | 9.20 | $1,214.40 |
| Pension | 132 | 6.15 | $811.80 |
| Annuity | 132 | 7.11 | $938.52 |
| Job Training | 132 | .10 | $13.20 |
| Vacation\Sick leave | 132 | 2.80 | $369.60 |
| TOTAL | | | $3,447.52 |

(Id. ¶¶ 33-35).

7) <u>April, May and June 2008</u>

Under the fourth cause of action in the Complaint, plaintiffs requested as damages "any amounts which may become due and owing . . . at the time of trial or judgment." (Id. ¶ 40). Thus, under this provision, plaintiffs seek contributions due and owing for the periods of April 2008 (id. ¶¶ 40-44), and for May 2008 and June 2008. (Schreiber Supp. Aff. ¶¶ 9-14). Defendant failed to submit reports and payments for these periods. (Schreiber Aff. ¶ 40; Schreiber Supp. Aff. ¶ 4). Since the amount of contributions owed for these three months is calculated in the same manner as the contributions due for the period December 2007 through March 2008, the amounts owed for each of the months of April 2008, May 2008, and June 2008

equal $3,447.52. (Schreiber Aff. ¶¶ 41-43; Schreiber Supp. Aff. ¶¶ 9-14).

8) January 2007

Finally, plaintiffs request an award of contributions for the period of January 2007. (Schreiber Aff. ¶ 44). Although defendant failed to submit remittance reports for this period, a shop steward report indicates that 32 hours should have been reported. (Id.) Using the 32 hours reflected on the shop steward reports multiplied by the applicable rate for each fund during this period, plaintiffs seek contributions in the total amount of $784.32. (Id. ¶ 45). The hours and rates are set forth below:

| FUND | HOURS | RATE | TOTAL |
|---|---|---|---|
| Welfare | 32 | 8.95 | $286.40 |
| Pension | 32 | 6.15 | $196.80 |
| Annuity | 32 | 6.61 | $211.52 |
| Job Training | 32 | .10 | $3.20 |
| Vacation/Sick Leave | 32 | 2.70 | 86.40 |
| TOTAL | | | $784.32 |

(Id.)

Accordingly, this Court respectfully recommends that plaintiffs be awarded $29,949.99 for the delinquent contributions owed for the periods in question.

C. Other Damages Available Under ERISA

In an ERISA action brought by a fiduciary for or on behalf of a plan to enforce rights under Section 1145, the statute specifies the damages to be awarded when judgment is entered in

11

favor of the plan. See 29 U.S.C. § 1132(g)(2). The statute provides for an award of:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of--
>    (i) interest on the unpaid contributions, or
>    (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2); see also Iron Workers Dist. Council of W.N.Y. and Vincinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502 (2d Cir. 1995).

Under the Trust Agreement, the employer is obligated to pay certain designated late charges, including interest calculated at the rate of 18% per annum from the first day of the month when the payment is due until the date payment was made. (Schreiber Aff. ¶ 16, Ex. E).[5] In addition, plaintiffs are entitled to the greater of the interest on the unpaid contributions or liquidated damages calculated at the rate of 20% of the delinquency, plus reasonable attorneys' fees. See 29 U.S.C. § 1132(g)(2); (Schreiber Aff. ¶ 16, Ex. C at 31); see also Lanzafame v. L & M Larjo Co., Inc., No. 03 CV 3640, 2006 WL 2795348, at *7 (E.D.N.Y. Sept. 26, 2006).

---

[5]The rate of 18% per annum was adopted by the Trustees in an amendment to the Restated Agreement and Declaration of Trust adopted on October 28, 2003.

1) <u>Calculation of Interest</u>

In their application, plaintiffs seek an award of interest at 18% per year[6] accrued for the period of delinquency calculated from the date that contributions became due for each period[7] until the date of this Report and Recommendation, January 5, 2009. (Schreiber Aff. ¶¶ 16-21, 31, 36-39, 43, 46; Schreiber Supp. Aff. ¶¶ 6, 13-14).

These amounts are set forth below:

| PAYMENT PERIOD | DATE DUE | TIME PERIOD TO 1/5/09 | UNPAID PRINCIPAL | INTEREST |
|---|---|---|---|---|
| January 2007 | 3/15/07 | 662 days | $784.32 | $256.05 |
| February 2007 | 4/15/07 | 631 days | $214.80 | $66.84 |
| March 2007 | 5/15/07 | 601 days | $214.80 | $63.66 |
| April 2007 | 6/15/07 | 570 days | $626.50 | $176.11 |
| May 2007 | 7/15/07 | 540 days | $1,029.25 | $274.09 |
| June 2007 | 8/15/07 | 509 days | $716.00 | $179.73 |
| July 2007 | 9/15/07 | - | - | - |
| August 2007 | 10/15/07 | - | - | - |
| September 2007 | 11/15/07 | - | - | - |
| October 2007 | 12/15/07 | - | - | - |
| November 2007 | 1/15/08 | 356 days | $2,231.68 | $391.80 |

---

[6]The 18% per annum interest rate is a rate that was found to be reasonable in <u>Chicago Dist. Council of Carpenters Pension Fund v. Industrial Erectors, Inc.</u>, 840 F. Supp. 1248, 1255 (N.D. Ill. 1993).

[7]Note that although the Trust Agreement provides that interest may be calculated from the first day of the month when each payment is due (Schreiber Aff. ¶ 16; Ex. C, Art. IX, § 3), plaintiffs' requested interest calculations begin with the due date of each payment. The Court therefore recommends that interest be calculated from the due dates.

13

| | | | | |
|---|---|---|---|---|
| December 2007 | 2/15/08 | 325 days | $3,447.52 | $552.55 |
| January 2008 | 3/15/08 | 296 days | $3,447.52 | $503.24 |
| February 2008 | 4/15/08 | 265 days | $3,447.52 | $450.54 |
| March 2008 | 5/15/08 | 235 days | $3,447.52 | $399.53 |
| April 2008 | 6/15/08 | 204 days | $3,447.52 | $346.83 |
| May 2008 | 7/15/08 | 174 days | $3,447.52 | $295.83 |
| June 2008 | 8/15/08 | 143 days | $3,447.52 | $243.12 |
| | | | Total | $4,199.92 |

In addition to seeking interest on the unpaid principal, plaintiffs also seek interest accrued on late payments of principal (Schreiber Aff. ¶¶ 16-19, 21-23) as follows:

| PAYMENT PERIOD | DATE DUE | TIME TO LATE PAYMENT | PAID PRINCIPAL | INTEREST |
|---|---|---|---|---|
| February 2007 | 4/15/07 | 73 days | $373.44 | $13.44 |
| March 2007 | 5/15/07 | 43 days | $373.44 | $7.92 |
| April 2007 | 6/15/07 | 12 days | $1,089.20 | $6.45 |
| May 2007 | 7/15/07 | - | - | - |
| June 2007 | 8/15/07 | 91 days | $2,259.20 | $101.39 |
| July 2007 | 9/15/07 | 59 days | $2,028.80 | $59.03 |
| August 2007 | 10/15/07 | 30 days | $1,014.40 | $15.01 |
| | | | Total | $203.23 |

The Court therefore respectfully recommends that plaintiffs be awarded a total of $4,403.15 in interest.

2) Liquidated Damages

Plaintiffs also seek liquidated damages calculated at 20% of the delinquent amounts for these same time periods (Schreiber Aff. ¶ 16) as follows:

| PERIOD | LIQUIDATED DAMAGES |
|---|---|
| January 2007 | $156.86 |
| February 2007 | $117.65 |
| March 2007 | $117.65 |
| April 2007 | $343.14 |
| May 2007 | $563.73 |
| June 2007 | $595.04 |
| July 2007 | $405.76 |
| August 2007 | $202.88 |
| September 2007 | - |
| October 2007 | - |
| November 2007 | $446.32 |
| December 2007 | $689.50 |
| January 2008 | $689.50 |
| February 2008 | $689.50 |
| March 2008 | $689.50 |
| April 2008 | $689.50 |
| May 2008 | $689.50 |
| June 2008 | $689.50 |
| Total | $7,775.53 |

Having reviewed the Schreiber Affirmation and Supplemental Affirmation, along with

the supporting documentation, plaintiffs' calculation of liquidated damages appears to be accurate, and this Court respectfully recommends that plaintiffs be awarded $7,775.53 in liquidated damages for the period of delinquency.

3) Attorneys' Fees

Plaintiffs also seek attorneys' fees and costs in the amount of $6,265.23 representing services performed by counsel in connection with plaintiffs' efforts to obtain this judgment. (Schreiber Aff. ¶ 47). In accordance with N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983), plaintiffs' counsel has submitted the Affirmation of Avram Schreiber, Esq., dated July 30, 2008, and the Supplemental Affirmation of Mr. Schreiber, dated September 15, 2008, as well as contemporaneous billing records setting forth the dates and amount of time during which services were rendered, along with the name of the attorney and a description of services performed. (Schreiber Aff. ¶ 47, Ex. I; Schreiber Supp. Aff. ¶ 15, Ex. A).

Specifically, plaintiffs' counsel's affirmation indicates that three attorneys and one paralegal performed services in connection with this matter. (Schreiber Aff. ¶ 47). Their rates are as follows: Avram H. Schreiber, a partner, charging $300.00 per hour; Woomee Lee and Kimberly Oberhauser, associates admitted to practice in 2004 and 2008, respectively, charging $225.00 per hour; and a paralegal, charging $80.00 per hour. (Id.) The $300.00 hourly rate charged for Mr. Schreiber's work is in keeping with the billing rates of similarly experienced attorneys in this district working on comparable matters. See, e.g., King v. STL Consulting, LLC, No. 05 CV 2719, 2006 WL 3335115, at *7 (E.D.N.Y. Oct. 3, 2006) (awarding attorneys' fees for Mr. Schreiber's time in a default ERISA case at the rate of $275.00 per hour); LaBarbera

v. J.E.T. Res., Inc., 396 F. Supp. 2d 346, 352-53 (E.D.N.Y. 2005) (compensating a partner at the rate of $250 per hour for work done on a straightforward ERISA action). It is therefore respectfully recommended that the requested rate of $300.00 per hour for Mr. Schreiber's time be approved.

The rate billed for the time of the associates on the case, however, should be adjusted. While $225.00 per hour may be an appropriate rate for Ms. Lee, who was admitted to practice in 2004 (Schreiber Aff. ¶ 47), it is unreasonable to charge an identical rate for the time of the other associate, who was just admitted this year and clearly has much less legal experience. (Id.) Less experienced attorneys in simple actions such as this should be compensated at a lower rate. See, e.g., King. v. STL Consulting, LLC, 2006 WL 3335115, at *7 (awarding $100.00 per hour for a recently admitted associate in an ERISA action); LaBarbera v. J.E.T. Res., Inc., 396 F. Supp. 2d at *352-53 (awarding the rate of $150.00 per hour for associates in an ERISA action). Accordingly, reflecting both the relative simplicity of the present action, and the varying levels of experience of the associates, it is respectfully recommended that Ms. Lee be awarded the requested rate of $225.00 per hour, but that Ms. Oberhauser, admitted to practice in 2008, be awarded the rate of $175.00 per hour.

The Court additionally recommends that the paralegal be compensated at the reasonable requested rate of $80.00 per hour. See LaBarbera v. Interstate Dev. Group, Inc., No. 07 CV 2052, 2008 WL 858985, at *8 (E.D.N.Y. Mar. 31, 2008) (approving an $80 per hour rate for paralegal work in an ERISA default action); Morin v. Nu-Way Plastering, Inc., No. 03 CV 405, 2005 WL 3470371, at *2 (E.D.N.Y. Dec. 19, 2005) (awarding $75.00 per hour for paralegals).

With respect to the number of hours expended in this action, it appears that during the

period from prior to the commencement of the action on May 8, 2007 to July 31, 2008, Mr. Schreiber spent 1.4 hours; Ms. Lee spent 1.5 hours; Ms. Oberhauser spent 10.9 hours; the paralegal spent 4.1 hours; and Ms. Lee and Ms. Oberhauser billed 1.2 hours and 6.9 hours, respectively, at the same rate as the paralegal. For the period July 31, 2008 through September 15, 2008, additional hours were spent by Mr. Schreiber (.4), by Ms. Oberhauser (7.6), by the paralegal (.6), and by Ms. Oberhauser billing at the paralegal rate (2.3).

|  | HOURS TO 7/31 | HOURS 7/31 - 9/15 | RATE | TOTAL |
| --- | --- | --- | --- | --- |
| Schreiber | 1.4 | .4 | $300.00 | $540.00 |
| Lee | 1.5 | - | $225.00 | $337.50 |
| Oberhauser | 10.9 | 5.3 | $175.00 | $2,835.00 |
| Paralegal Work | 12.2 | 2.9 | $80.00 | $1,208.00 |
| Total | 26.0 | 8.6 |  | $4,920.50 |

Based on a review of the descriptions of the services rendered, this Court finds the time reflected in plaintiffs' request for attorneys' fees to be reasonable and appropriate under the circumstances. Plaintiffs also seek an award of costs incurred in litigating this matter, totaling $534.73. (Schreiber Aff. Ex. I; Schreiber Supp. Aff. Ex. A). Having reviewed the costs requested, the Court finds them to be reasonable as well.

Accordingly, the Court respectfully recommends an award of attorney's fees and costs in the amount of $5,455.23, reflecting the application of the adjusted recommended hourly rates.

D. Permanent Injunction

In addition to monetary damages, plaintiffs also seek a permanent injunction to ensure that defendant complies with the CBA and Declaration of Trust and the requirements of ERISA

in the future. (Schreiber Aff. ¶¶ 50-53). A permanent injunction is an appropriate remedy under Section 1132(g)(2)(E) of ERISA, which states that in a successful action to enforce the requirements of ERISA, an ERISA plan may recover "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E); see Beck v. Levering, 947 F.2d 639, 641 (2d Cir. 1991) (per curiam), cert. denied, 504 U.S. 909 (1992); Lanzafame v. L & M Larjo Co., Inc., 2006 WL 2795348, at *9 (citing cases); King v. Nelco Indus., Inc., No. 96 CV 4177, 1996 WL 629564 (E.D.N.Y. Oct. 23, 1996). In a case such as this, where defendant is in default, and where the applicable statute provides for injunctive relief as a possible remedy, the court may issue an injunction provided that plaintiffs meet the requirements for obtaining a permanent injunction, including a showing of "'irreparable harm should the injunction not be granted.'" King v. Nelco Indus., Inc., 1996 WL 629564, at *1 (quoting Haitian Centers Council, Inc. v. McNary, 969 F.2d 1326, 1338 (2d Cir. 1992), vacated as moot, 509 U.S. 918 (1993)); see also LaBarbera v. David Liepper & Sons, Inc., No. 06 CV 1371, 2006 WL 2423420, at *6 (E.D.N.Y. Jul. 06, 2006). Plaintiffs must also demonstrate the absence of an adequate remedy at law. See LaBarbera v. David Liepper & Sons, Inc., 2006 WL 2423420, at *6.

In this case, defendant defaulted, and has failed to make payment of required contributions for over a year. However, the CBA on which plaintiffs base their claims appears to have expired on June 30, 2008. (Shreiber Aff. Ex. B at 1). Plaintiffs' submissions, including their supplemental affirmation submitted on September 15, 2008, make no mention of any extension of the CBA or of required fringe benefit contributions relating to any period after June 2008. If plaintiffs can demonstrate that defendant is subject to any continuing obligation, they may make an application to the Court for a permanent injunction. However, in the absence of

such evidence, this Court respectfully recommends that plaintiffs' request for a permanent injunction be denied.

## CONCLUSION

Accordingly, it is respectfully recommended that plaintiffs be awarded damages in the amount of $47,583.90, representing $29,949.99 owed in principal contributions; $4,403.15 in interest; $7,775.53 in liquidated damages; and $5,455.23 in attorneys' fees and costs. In addition, it is respectfully recommended that plaintiffs' request for a permanent injunction be denied at this time without prejudice to a further showing.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
January 5, 2009

/s/ Cheryl Pollak
CHERYL L. POLLAK
United States Magistrate Judge